UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Ethel Carlson and Rex Carlson, ) | | |
| Plaintiffs ) | | |
| ) | | |
| v. ) | | Case No. 10-1230 |
| ) | | |
| Illinois Power Co., ) | | |
| Defendant ) | | |

## ORDER

Now before the Court is the motion to compel (#23) filed by Defendant. The motion is fully briefed and I have carefully considered the arguments of the parties.

The single document in question is a document as to which the Plaintiffs claim attorney client and/or work product privilege. They further assert that the document is irrelevant to this litigation. At the Court's order, the document has been filed under seal, and the Court has also considered that document in the context of the arguments made by the parties. As explained herein, the motion to compel [#23] is GRANTED.

## BACKGROUND

This case involves purportedly polluted land, presently owned by Ethel Carlson and formerly owned by Ameren. The suit is brought under the Resource Conservation and Restoration Act ("RCRA"), which allows for suit by property owners who act as attorneys-general on behalf of the environment.

In this Order, the single document at issue is referred to as the "Agreement." Plaintiffs, in their response to the pending motion, describe the Agreement as:

> an agreement ... authored by undersigned counsel jointly representing[1] Thomas Snitzer and the Carlsons. The Agreement relates to negotiating and potentially filing suit against Ameren relating to the former Galesburg Manufactured Gas site which is the subject of this action. ... [I]n the Agreement Snitzer agreed to provide support to the Carlsons in connection with their negotiations with, and potential filing suit against, Ameren relating to the MGP site that is the subject of this action. The Agreement outlines Rex Carlson's communications to his attorney (the undersigned) relating to the position that the Carlsons planned to take in negotiations with and potential litigation against Ameren relating to the MBP site, [sic] It also outlines potential settlement scenarios relating to mr. Carlson's communications, as explained by his attorney. The Agreement provided that Snitzer's support would include, but not be limited to, acting as representative for the Carlsons under certain scenarios in anticipated settlement discussions with Ameren, and provided for Snitzer's compensation for his support to the Carlson.

Response (Doc. #25) p.2-3.

The Agreement was signed and dated on April 11, 2010, about 3 months before this lawsuit was filed. The Agreement is referenced in a Memorandum of Agreement that was filed with the Knox County Clerk. The Memorandum of Agreement reads in its entirety:

> This memorandum agreement is executed between Ethel Carlson ("Carlson"), as owner of the property at Ferris and Cedar Streets in Galesburg, Illinois with the address of 151 West Ferris, Galesburg, Illinois 61401 (PIN No. 99-100453-002)("The Property") and Thomas Snitzer. Carlson and Snitzer have entered into an Agreement providing for payments to be made to Snitzer upon the sale of the Property or certain other events. The Agreement is binding upon future owners of the property. Upon the termination date of the Agreement or receipt of the payment under the Agreement, this Memorandum of Agreement is automatically released.

### RELEVANCE

Ameren asserts that the Agreement is relevant to its theory that the Carlsons filed this suit based not on any concerns for the environment but rather on the statutorily- impermissible motive of personal pecuniary gain. The Carlsons assert that the document in question is irrelevant to this litigation because nowhere has Ameren plead a claim or defense involving such improper motives.

---

[1] Defendant asserts that initially (at the Rule 26f conference) counsel for the Carlsons denied representing Snitzer but later "clarified his position" For purposes of this Motion, it is assumed that counsel represented both the Carlsons and Snitzer in preparing the Agreement.

As Judge Mihm has now pointed out in two separate Orders (Doc.#20 and #22), the possibility that pecuniary motives have driven the Carlsons' conduct was adequately raised by Ameren in its counterclaim and its affirmative defenses. The Agreement is therefore relevant to this potential set of facts.

## ATTORNEY CLIENT PRIVILEGE

Not all communications between a lawyer and client are privileged; only communication made in confidence to an attorney for the purpose of obtaining legal advice is protected. United States v. Weger, 709 F.2d 1151, 1154 (7th Cir. 1983). This privilege is to be "strictly confined within the narrowest possible limits consistent with the logic of its principle." Id., quoting In re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973), cert. denied, 414 U.S. 867 (1973). It is designed to protect only such information a client may communicate to his attorney so that the attorney may properly, competently and ethically carry out representation of the client. Weger, 709 F.2d at 1154, relying on Fisher v. United States, 425 U.S. 391 (1976).

The party claiming the privilege bears the burden to prove each of the elements in order to obtain protection from discovery. U.S. v. Evans, 113 F.3d 1457 (7th Cir. 1997), citing U.S. v. White, 950 F.2d 426, 430 (7th Cir. 1991). See also, U.S. v. BDO Seidman, 337 F.3d 802, 811 (7th Cir. 2003); Christman v. Brauvin Realty Advisors, Inc., 185 F.R.D. 251,255 (N.D.Ill.1999). Those elements are as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

White, 950 F.2d at 430.

I have reviewed the Agreement and find that it is not an attorney-client communication. The fact that the Agreement was prepared by an attorney does not suffice to protect it from discovery.

The Agreement contains no communications between attorney and client, and despite Plaintiffs' protestations to the contrary, it neither reflects the seeking or giving of legal advice nor any substantive discussion of strategy. It simply sets out the parameters of the business aspects of the relationship between the Carlsons and Snitzer.

## WORK PRODUCT

In <u>Hickman v. Taylor</u>, 329 U.S. 495, (1947), the Supreme Court recognized that it is essential that an attorney be allowed "a certain degree of privacy" of proper presentation of his client's case. This presentation includes that the attorney "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." <u>Id.</u> at 510-11. This work, said the Court, is contained in interviews, statements, memos, letters, briefs, notes and "countless other tangible and intangible ways. <u>Id.</u> at 511. In other words, the doctrine provides "a privileged area within which [the attorney] can analyze and prepare his client's case." <u>U.S. v. Nobles</u>, 422 U.S. 225, 236 (1975).

The Federal Rules incorporate protection for this type of work product. Rule 26(b)(3)(A) provides that "documents ... prepared in anticipation of litigation or for trial by or for another party or its representative" is ordinarily not discoverable. They may be discovered if (1) they are otherwise discoverable and (2) the party shows that it has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." If such documents are ordered produced, the court must protect against disclosure of "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."

What does it mean to say that a document was prepared "in anticipation of litigation"? The Seventh Circuit has explained,

> The work-product doctrine shields materials that are prepared in anticipation of litigation from the opposing party, on the theory that the opponent shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy.

Mattenson v. Baxter Healthcare Corp., 438 F.3d 763, 767 -768 (7th Cir.2006). So not every document related to impending or ongoing litigation is covered by this doctrine, even if the document was prepared by the attorney for one of the parties. A document is only protected if disclosure of its contents would somehow provide the other side with insights into substantive trial preparation work done by the attorney.

There is not one iota of legal research, mental impression, trial strategy, or substantive theorizing contained in the Agreement. It sets out a business relationship between the Carlsons and Snitzer, who agrees to act as the representative of the Carlsons in this litigation in exchange for monetary compensation. That business arrangement may have been prepared in advance of this litigation and it may be related to this litigation, but it was not designed for use in this litigation. It is not work product.

## CONCLUSION

The Agreement is relevant. It is not privileged and it is not protected by the work product doctrine. It is therefore discoverable. The motion to compel [#23] is accordingly GRANTED. Plaintiffs shall provide a copy of the Agreement to defense counsel within 14 days of the date of this Order.

ENTERED ON March 2, 2011

                                 s/ John A. Gorman

                                 JOHN A. GORMAN
                         UNITED STATES MAGISTRATE JUDGE